UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHAEL L. FLOWERS,

        Petitioner,

vs.                            Case No. 3:16-cv-539-J-39JRK

SECRETARY, DEPARTMENT
OF CORRECTIONS, et al.,

        Respondents.

_____

**<u>ORDER</u>**

**I.  INTRODUCTION**

Petitioner Michael L. Flowers, an inmate of the Florida penal system proceeding pro se, challenges his state court (Duval County) conviction for two counts of aggravated battery through a Second Amended Petition for writ of habeas corpus (Petition) (Doc. 13) pursuant to 28 U.S.C. § 2254. He is serving a term of life imprisonment on count one and a concurrent term of twenty years in prison on count two. Petition at 1. Respondents filed an Answer to Petition for Writ of Habeas Corpus (Response) (Doc. 32).[1] Thereafter, Petitioner filed a Reply to Respondents' Answer to

_____

[1] The Court hereinafter refers to the exhibits to the Appendix (Doc. 14) as "Ex." Where provided, the page numbers referenced in this opinion are the Bates stamp numbers at the bottom of each page of the exhibit. Otherwise, the page number on the particular document will be referenced.

Petitioner's Petition for Writ of Habeas Corpus (Reply) (Doc. 37).
The Petition is timely filed.  _See_ Response at 16-19.

## II.  EVIDENTIARY HEARING

The pertinent facts are fully developed in this record or the
record otherwise precludes habeas relief; therefore, the Court is
able to "adequately assess [Petitioner's] claim[s] without further
factual development," _Turner v. Crosby_, 339 F.3d 1247, 1275 (11th
Cir. 2003), _cert_. _denied_, 541 U.S. 1034 (2004).  As the record
refutes the asserted factual allegations or otherwise precludes
habeas relief, the Court finds Petitioner is not entitled to an
evidentiary hearing.  _Schriro v. Landrigan_, 550 U.S. 465, 474
(2007).  Petitioner has not met his burden of demonstrating a need
for an evidentiary hearing.  _See_ _Chavez v. Sec'y, Fla. Dep't of
Corr._, 647 F.3d 1057, 1060 (11th Cir. 2011) (opining a petitioner
bears the burden of establishing the need for an evidentiary
hearing with more than speculative and inconcrete claims of need),
_cert_. _denied_, 565 U.S. 1120 (2012).

## III.  CLAIMS OF PETITION

In his Petition, Petitioner raises fourteen grounds seeking
post conviction relief.  He primarily raises claims of ineffective
assistance of trial counsel, but also raises two claims of
ineffective assistance of appellate counsel.  The fourteen grounds
are: (1) the ineffective assistance of trial counsel by opening the
door to prejudicial evidence of Petitioner's post-arrest silence

and post-Miranda invocation of right to counsel; (2) the ineffective assistance of trial counsel for failure to adequately prepare for the state's impeachment of Shantell Smith regarding delay in coming forward with alibi information; (3) the ineffective assistance of trial counsel for failure to object to the prosecutor's closing argument with regard to excessive comments on Petitioner's post-arrest silence and post-Miranda invocation of right to counsel; (4) the ineffective assistance of trial counsel for failure to object to the trial court's handling of a jury question and refusal to read-back Jerry Strickland's testimony; (5) the ineffective assistance of appellate counsel for failure to raise on appeal the trial court's error in denying the motion to dismiss information; (6) the ineffective assistance of appellate counsel for failure to timely raise a sentencing issue on appeal; (7) the ineffective assistance of trial counsel for failure to call Sgt. Butler as a defense witness; (8) the ineffective assistance of counsel for failure to request a cautionary instruction on reliability of identification; (9) the ineffective assistance of counsel for failure to file a motion to suppress Petitioner's identification based on an impermissibly suggestive photo line-up; (10) the ineffective assistance of counsel for failure to investigate and introduce reverse Williams' rule evidence; (11) the ineffective assistance of counsel for failure to object to prosecutorial misconduct during closing argument; (12) the

ineffective assistance of trial counsel for failure to obtain Petitioner's phone records and present the records at trial to support the alibi defense; (13) the ineffective assistance of counsel for failure to object to a sleeping juror, Ms. Batton; and (14) the cumulative effect of trial counsel's errors rendered counsel's assistance ineffective and deprived Petitioner of a fair trial. In each ground, Petitioner claims deprivations of his Sixth and Fourteenth Amendment rights.

### IV.  STANDARD OF REVIEW

The Antiterrorism and Effective Death Penalty Act (AEDPA) governs a state prisoner's federal petition for habeas corpus. See 28 U.S.C. § 2254. This statute "imposes important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases." Shoop v. Hill, 139 S.Ct. 504, 506 (2019) (per curiam). The AEDPA statute: "respects the authority and ability of state courts and their dedication to the protection of constitutional rights." Id. Therefore, "[u]nder AEDPA, error is not enough; even clear error is not enough." Meders v. Warden, Ga. Diagnostic Prison, 911 F.3d 1335, 1349 (11th Cir. 2019) (citing Virginia v. LeBlanc, 137 S.Ct. 1726, 1728 (2017) (per curiam)).

Applying the statute as amended by AEDPA, federal courts may not grant habeas relief unless one of the claims: "(1)'was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United

States,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.' 28 U.S.C. § 2254(d)." <u>Nance v. Warden, Ga. Diagnostic Prison</u>, 922 F.3d 1298, 1300-1301 (11th Cir. 2019).

Thus, in order to obtain habeas relief, the state court decision must unquestionably conflict with Supreme Court precedent. <u>Harrington v. Richter</u>, 562 U.S. 86, 102 (2011). If some fair-minded jurists could agree with the lower court's decision, habeas relief must be denied. <u>Meders</u>, 911 F.3d at 1351. As noted in <u>Richter</u>, unless the petitioner shows the state court's ruling was so lacking in justification that there was error well understood and comprehended in existing law beyond any possibility for fair-minded disagreement, there is no entitlement to habeas relief. <u>Burt v. Titlow</u>, 571 U.S. 12, 19-20 (2013).

In undertaking its review, this Court is not obliged "to flyspeck the state court order or grade it." <u>Meders</u>, 911 F.3d at 1349. Indeed, specificity and thoroughness of the state court decision is not required; even if the state court fails to provide rationale or reasoning, AEDPA deference is due "absent a conspicuous misapplication of Supreme Court precedent." <u>Id</u>. at 1350 (citation and quotation marks omitted).

Of importance, a state court's finding of fact, whether a state trial court or appellate court, is entitled to a presumption of correctness under 28 U.S.C. § 2254(e)(1). But, this presumption

of correctness applies only to findings of fact, not mixed determinations of law and fact. <u>Brannan v. GDCP Warden</u>, 541 F. App'x 901, 903-904 (11th Cir. 2013) (per curiam) (recognizing the distinction between a pure question of fact from a mixed question of law and fact), <u>cert</u>. <u>denied</u>, 573 U.S. 906 (2014).

Where there has been one reasoned state court judgment rejecting a federal claim followed by an unexplained order upholding that judgement, federal habeas courts employ a "look through" presumption: "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning." <u>Wilson v. Sellers</u>, 138 S.Ct. 1188, 1192 (2018) (Wilson).

Once a claim is adjudicated in state court and a prisoner seeks relief in the federal court system, AEDPA's formidable barrier to habeas relief comes into play, and it is very difficult for a petitioner to prevail under this stringent standard. As such, state-court judgments will not easily be set aside once the Court employs this highly deferential standard that is intentionally difficult to meet. <u>See</u> <u>Richter</u>, 562 U.S. at 102. Although AEDPA does not impose a complete bar to issuing a writ, it severely limits those occasions to those "where there is no possibility fairminded jurists could disagree that the state court's decision conflicts" with Supreme Court precedent. <u>Id</u>. In sum, application of the standard set forth in 28 U.S.C. § 2254(d)

ensures that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems, and not a mechanism for ordinary error correction. <u>Richter</u>, 562 U.S. at 102-103 (citation and quotation marks omitted).

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Petitioner raises numerous claims of ineffective assistance of counsel. To prevail on his Sixth Amendment claims, Petitioner must satisfy the two-pronged test set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984), requiring that he show both deficient performance (counsel's representation fell below an objective standard of reasonableness) and prejudice (there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different). <u>See</u> <u>Brewster v. Hetzel</u>, 913 F.3d 1042, 1051-52 (11th Cir. 2019) (reviewing court may begin with either component).

In order to obtain habeas relief, a counsel's errors must be so great that they actually adversely effect the defense. In order to satisfy this prejudice prong, the reasonable probability of a different result must be "a probability sufficient to undermine confidence in the outcome." <u>Strickland</u>, 466 U.S. at 694.

The standard created by <u>Strickland</u> is a highly deferential standard, requiring a most deferential review of counsel's decisions. <u>Richter</u>, 562 U.S. at 105. Not only is there the "<u>Strickland</u> mandated one layer of deference to the decisions of trial counsel[,]" there is the added layer of deference required by

AEDPA: the one to a state court's decision.  <u>Nance</u>, 922 F.3d at

1303.  Thus,

> Given the double deference due, it is a "rare
> case in which an ineffective assistance of
> counsel claim that was denied on the merits in
> state court is found to merit relief in a
> federal habeas proceeding." <u>Johnson v. Sec'y,
> DOC</u>, 643 F.3d 907, 911 (11th Cir. 2011). And,
> for the reasons we have already discussed, it
> is rarer still for merit to be found in a
> claim that challenges a strategic decision of
> counsel.

<u>Nance</u>, 922 F.3d at 1303.

## VI.  INEFFECTIVE ASSISTANCE OF APPELLATE COUNSEL

The two-part <u>Strickland</u> standard is applicable to this claim.

<u>Overstreet v. Warden</u>, 811 F.3d 1283, 1287 (11th Cir. 2016).  The

Eleventh Circuit describes <u>Strickland</u>'s governance of this type of

claim:

> To prevail on a claim of ineffective
> assistance of appellate counsel, a habeas
> petitioner must establish that his counsel's
> performance was deficient and that the
> deficient performance prejudiced his defense.
> <u>See</u> <u>Strickland v. Washington</u>, 466 U.S. 668,
> 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674
> (1984); <u>Brooks v. Comm'r, Ala. Dep't of Corr.</u>,
> 719 F.3d 1292, 1300 (11th Cir. 2013) ("Claims
> of ineffective assistance of appellate counsel
> are governed by the same standards applied to
> trial counsel under <u>Strickland</u>.") (quotation
> marks omitted). Under the deficient
> performance prong, the petitioner "must show
> that counsel's representation fell below an
> objective standard of reasonableness."
> <u>Strickland</u>, 466 U.S. at 688, 104 S.Ct. at
> 2064.

<u>Rambaran v. Sec'y, Dep't of Corr.</u>, 821 F.3d 1325, 1331 (11th Cir.

2016), <u>cert</u>. <u>denied</u>, 137 S.Ct. 505 (2016).

As with a claim of ineffective assistance of trial counsel, the combination of Strickland and § 2254(d) requires a doubly deferential review of a state court decision. See Richter, 562 U.S. at 105. When considering deficient performance by appellate counsel,

> a court must presume counsel's performance was "within the wide range of reasonable professional assistance." Id.[2] at 689, 104 S. Ct. 2052. Appellate counsel has no duty to raise every non-frivolous issue and may reasonably weed out weaker (albeit meritorious) arguments. See Philmore v. McNeil, 575 F.3d 1251, 1264 (11th Cir. 2009). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Smith v. Robbins, 528 U.S. 259, 288, 120 S.Ct. 746, 145 L.Ed.2d 756 (2000) (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)); see also Burger v. Kemp, 483 U.S. 776, 784, 107 S. Ct. 3114, 97 L.Ed.2d 638 (1987) (finding no ineffective assistance of counsel when the failure to raise a particular issue had "a sound strategic basis").

Overstreet, 811 F.3d at 1287; see also Owen v. Sec'y, Dep't of Corr., 568 F.3d 894, 915 (11th Cir. 2009) (footnote omitted) (since the underlying claims lack merit, "any deficiencies of counsel in failing to raise or adequately pursue [meritless issues on appeal] cannot constitute ineffective assistance of counsel"), cert. denied, 558 U.S. 1151 (2010).

To satisfy the prejudice prong, a petitioner must show "but for the deficient performance, the outcome of the appeal would have

---

[2] Strickland, 466 U.S. at 689.

been different." <u>Black v. United States</u>, 373 F.3d 1140, 1142 (11th

Cir. 2004) (citations omitted), <u>cert</u>. <u>denied</u>, 543 U.S. 1080 (2005);

<u>see</u> <u>Philmore v. McNeil</u>, 575 F.3d 1251, 1264-65 (11th Cir. 2009)

(per curiam) ("In order to establish prejudice, we must first

review the merits of the omitted claim. Counsel's performance will

be deemed prejudicial if we find that 'the neglected claim would

have a reasonable probability of success on appeal.'") (citations

omitted), <u>cert</u>. <u>denied</u>, 559 U.S. 1010 (2010).

## VII. FINDINGS OF FACT AND CONCLUSIONS OF LAW

### A. Ground One

In his first ground, Petitioner claims the ineffective

assistance of trial counsel by opening the door to prejudicial

evidence of Petitioner's post-arrest silence and post-Miranda

invocation of right to counsel. Petition at 5. Petitioner raised

a similar claim in his September 5, 2013 Amended Motion for

Postconviction Relief (Rule 3.850 motion). Ex. GGG at 707-15. The

circuit court denied the motion. <u>Id</u>. at 1249-1403. In its order,

the circuit court incorporated the arguments set forth in the

state's response, and attached and incorporated the same

attachments attached to and referenced in the state's response.

<u>Id</u>. at 1249-50. <u>See</u> <u>id</u>. at 1092-1243.

In denying relief, the circuit court found Petitioner failed

to establish either ineffectiveness or resulting prejudice. <u>Id</u>. at

1249. The court held:

> In its response to defendant's motion,
> the State of Florida addressed each of

defendant's eight separate grounds stated in his motion for post-conviction relief. The Court has carefully reviewed defendant's motion and the State's response. Having done so, the Court concludes that the State has demonstrated, by its legal argument and references to attachments from the record of the case, that the record conclusively refutes defendant's arguments that he is entitled to post-conviction relief. Specifically, as to each ground defendant raised in support of his motion, **the record conclusively demonstrates that defendant did not receive ineffective assistance of counsel and that defendant did not suffer prejudice resulting from the actions of his trial counsel that were alleged by defendant to be ineffective. When viewed in the context of the entire trial transcript, each of the allegedly deficient acts by trial counsel appears reasonably calculated to advance a legitimate interest of Defendant or not to have resulted in any prejudice to Defendant.**

Id. (emphasis added).

Petitioner exhausted this ground by appealing its denial to the First District Court of Appeal 1st DCA (1st DCA). Id. at 1404-1405. On February 12, 2016, the 1st DCA affirmed per curiam without explanation. Ex. JJJ. The mandate issued March 9, 2016. Ex. KKK. This affirmance is an adjudication on the merits entitled to AEDPA deference. This Court will employ the "look through" presumption; the Court will "look through" the unexplained decision to the last related state court decision that provides relevant rationale (the circuit court's decision denying post conviction relief) and will presume the unexplained 1st DCA decision adopted the same reasoning as the circuit court. Wilson.

Notably, in its response to the Rule 3.850 motion, the state appropriately referenced the _Strickland_ standard, addressed the claim, and attached relevant portions of the record. Ex. GGG at 1092-99. The Court is convinced that fairminded jurists could agree with the circuit court's decision. Thus, the trial court's ruling incorporating the state's response and affirmed by the 1st DCA is entitled to AEDPA deference. The decision is not inconsistent with Supreme Court precedent, and the state court's adjudication of this claim is not contrary to or an unreasonable application of _Strickland_, or based on an unreasonable determination of the facts. Thus, AEDPA deference is due, and Petitioner is not entitled to relief on ground one.

Upon review, Petitioner failed to overcome the presumption that counsel's performance fell within the wide range of reasonably professional assistance. The record demonstrates, initially, the defense called Shantell Smith out of order. Ex. C at 449. Ms. Smith testified that upon Petitioner's arrest,[3] Ms. Smith spoke to the police, as she was in Petitioner's sister's apartment when Petitioner was arrested. _Id_. at 456. Ms. Smith said the police asked for her driver's license, which she provided. _Id_. Thus, based on her testimony, the police were advised of her identity on the date of Petitioner's arrest and the police also knew where Petitioner's sister lived. Ms. Smith testified she asked the

---

[3] The record shows Petitioner was arrested on February 19, 2004. Ex. A, Arrest and Booking Report.

police questions, but the police never came back and questioned her. Id.

On cross examination, the state asked whether Ms. Smith had called the police with information concerning the alibi defense. Id. at 465. Ms. Smith said she called Petitioner's lawyer, but she also said she did not call the police because the police had already been informed that Petitioner was with her at the time of the offense. Id. at 465-66. Additionally on cross examination, Ms. Smith testified:

> Yes. Well see, my instinct was he informed the detectives that he was with me. Their job was to get in contact with me. When they didn't get in contact with me I got in contact with his lawyer and told his lawyer about the situation. And she, I thought that she was going to take it upon herself to find out why they didn't contact me. But I thought they had that information already.

Id. at 467.

On re-direct, when asked if she remembered contacting Miss Limoge, defense counsel, Ms. Smith said she contacted Miss Limoge when she found out she was going to be Petitioner's defender. Id. at 470. Ms. Smith explained that she contacted Miss Limoge because no one, meaning no detectives, had tried to get in contact with her to obtain any information. Id.

The state called Officer Robert Monroe. Id. at 473. On cross examination, he testified that during the investigation, he did not know a Ms. Smith and never made any attempt to contact her. Id. at 526-27. Thereafter, the state offered to allow questioning in

regards to the interview of Petitioner, as long as Petitioner stipulated to the statement being freely and voluntarily made by him after the reading of his constitutional rights. Id. at 530-31. Ms. Limoge asked to confer with Petitioner. Id. at 531. After a conference, Ms. Limoge said the defense would stipulate to the voluntariness. Id. The court made further inquiry, asking Petitioner if he agreed with the stipulation. Id. at 531-33. Petitioner responded in the affirmative. Id. at 532. After providing further explanation, the court asked Petitioner whether he agreed to the stipulation, and he confirmed that he was in agreement and he wanted counsel to agree to the stipulation. Id. at 532-33.

Based upon the stipulation, the following occurred. Officer Monroe attested that after Petitioner was advised of his constitutional rights and acknowledged he understood his rights, he told the detectives he was aware of the incident but he was not there, and during the time of the incident he was at his girlfriend's house. Id. at 539. Petitioner also told the police it must be a case of mistaken identity. Id. Petitioner clarified that he had knowledge of the incident because he had received a phone call and was told two guys jumped another guy. Id. at 540. Petitioner repeated that he was with his girlfriend and it was a case of mistaken identity. Id. Petitioner concluded his statement by saying that if the detectives had further questions, they would have to ask Petitioner's attorney. Id.

Officer Monroe admitted he did not follow-up on the girlfriend, nor did he attempt to contact any of Petitioner's family members, although Officer Monroe stated he was partly responsible for the investigation in conjunction with the homicide unit. Id. at 541. When asked if it was the responsibility of the citizen to contact the police to help conduct an investigation, Mr. Monroe responded no. Id.

Officer Monroe said he did interview Petitioner in June and Petitioner agreed to talk to him, and Petitioner told the officer his girlfriend's name was Shantell Smith, but again, Officer Monroe did not follow-up on the information. Id. at 542. On re-direct, the state asked what happens when an individual asks for an attorney, and Officer Monroe responded the interview is concluded. Id. at 555-56. On re-cross examination, Officer Monroe was again asked if Petitioner mentioned Shantell Smith on June 26, 2004, and Officer Monroe responded that Petitioner said he may have been with his girlfriend Shantell Smith. Id. at 566. Officer Monroe stated he never made any attempt to contact Shantell Smith. Id. at 567. After review of the video of the interview, Officer Monroe admitted that Petitioner said he was at Shantell Smith's house on Dunn Avenue during the time of the incident, not that he may have been with his girlfriend. Id. at 578.

The Court is not convinced defense counsel's performance fell below an objective standard of reasonableness "by opening the door" to evidence of post-arrest silence and post-Miranda invocation of

right to counsel.  Defense counsel's actions were well within the scope of permissible performance.  She laid the foundation with Ms. Smith by asking if she were present at the time of Petitioner's arrest and eliciting testimony about providing identification, a driver's license, which would necessarily include an address.  Also of import, although Officer Monroe said he did not know who Ms. Smith was, he later admitted that Petitioner told him during an interview that Petitioner's girlfriend's name was Shantell Smith. Significantly, when the state attempted to discredit Ms. Smith's alibi testimony, defense counsel asked Officer Monroe if it were a citizen's responsibility to contact the police to help conduct an investigation, and Officer Monroe responded in the negative, after admitting that he never followed-up by reaching out to Ms. Smith during the investigation.

With respect to the stipulation to allow questioning in regards to the initial interview of Petitioner, the record is clear that defense counsel conferred with Petitioner about the proposed agreement before accepting the agreement, the court explained the agreement and asked Petitioner several times if he agreed with the stipulation, and ultimately, Petitioner decided to accept the agreement and enter into the stipulation.  Indeed, with Petitioner's consent and agreement, defense counsel decided to put Petitioner's statement into evidence although it allowed the jury to learn of his request for counsel during the initial interrogation because it was necessary to corroborate Ms. Smith's

testimony that the alibi was not a recent fabrication since Petitioner promptly told the detectives he was at his girlfriend's house in the initial interview.

"The standard for effective assistance is reasonableness, not perfection." Brewster, 913 F.3d at 1056 (citations omitted). Petitioner has failed to establish that no competent counsel would have taken the steps counsel did in this trial.

Petitioner failed to carry his burden of showing that counsel's representation fell outside the wide range of reasonably professional assistance. Even assuming deficient performance by counsel, Petitioner has not shown resulting prejudice. There is not a reasonable probability that the outcome of the case would have been different if trial counsel had taken the actions suggested by Petitioner. Defense counsel's performance did not fall below an objective standard of reasonableness prejudicing the defense. As such, ground one is due to be denied.

### B. Ground Two

In his second ground, Petitioner raises a claim of the ineffective assistance of trial counsel for failure to adequately prepare for the state's impeachment of Shantell Smith regarding delay in coming forward with alibi information. Petition at 8. Petitioner raised this issue in the second ground of his Rule 3.850 motion. Ex. GGG at 716-20. The circuit court denied relief. Id. at 1249-50. The 1st DCA per curiam affirmed. Ex. JJJ.

The circuit court, in addressing Petitioner's claims of ineffective assistance of counsel, adopted the state's response, which set forth the two-pronged <u>Strickland</u> standard of review for the claims grounded in the Sixth Amendment. Ex. GGG at 1249-50. Finding no deficient performance or prejudice, the circuit court denied relief. <u>Id</u>.

The record demonstrates defense counsel made a concerted effort to diminish the impact of the state's cross examination of Ms. Smith. As noted under ground one, the defense decided to enter into a stipulation in order to counter the state's contention of recent fabrication. As the trial court stated, it is a common question to ask an alibi witness if the witness ever tried to contact the police. Ex. C at 692. In this instance, Ms. Smith had contacted defense counsel, not the police. Thus, the trial court concluded that what Ms. Smith told defense counsel was irrelevant to the state's impeachment. <u>Id</u>. As such, Petitioner failed to demonstrate prejudice, because even if his attorney had testified herself or called someone from her office to testify, it would not have affected the impact of the state's cross examination of Ms. Smith; therefore, it would not have resulted in a different outcome. Consequently, there was no deficient performance.

Moreover, the trial record demonstrates Petitioner's attorney adequately prepared Ms. Smith for impeachment. Ms. Smith testified she thought the police had been informed that Petitioner was with

her at the time of the offense.[4]  Furthermore, Ms. Smith testified she believed it was part of the detectives's job to contact her and obtain relevant information.  She also expressed her concern when the detectives did not contact her.  Finally, she testified that she took it upon herself to contact defense counsel as soon as she found out the identity of counsel, noting that no detectives had contacted her.

The 1st DCA per curiam affirmed the circuit court's decision. Ex. JJJ.  This decision is an adjudication on the merits and is entitled to deference under 28 U.S.C. § 2254(d).  Applying Wilson's look-through presumption, the rejection of the claim of ineffective assistance of counsel for failure to adequately prepare Ms. Smith for the state's impeachment was based on a reasonable determination of the facts and a reasonable application of Strickland.

The 1st DCA's decision is not inconsistent with Supreme Court precedent, and the state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts.  When considering the claim of ineffective assistance of counsel, this Court must try to eliminate the distorting effects of hindsight, as counseled to do so in Strickland, 466 U.S. at 689.

---

[4] Of note, defense counsel and Petitioner decided to enter into the stipulation because the state agreed to the admission of hearsay testimony that Petitioner promptly told the police, upon his arrest, that he was at his girlfriend's house and Petitioner thought his being named as the perpetrator was a case of mistaken identity.

The Court recognizes, "[t]here are countless ways to provide effective assistance in any given case." Id. The trial court found neither deficient performance or prejudice. As stated previously, AEDPA deference is warranted. The record shows the 1st DCA affirmed the decision of the trial court in denying this ground, and this Court will presume that the state court adjudicated the claim on its merits, as there is an absence of any indication or state-law procedural principles to the contrary. Since the last adjudication on the merits is unaccompanied by an explanation, it is Petitioner's burden to show there was no reasonable basis for the state court to deny relief. He has failed to do so. The Court concludes that the state court's adjudication of this claim is not contrary to or an unreasonable application of Strickland, or based on an unreasonable determination of the facts. Based on the above, Petitioner is not entitled to habeas relief on ground two.

## C. Ground Three

In his third ground for relief, Petitioner raises a claim of ineffective assistance of trial counsel for failure to object to the prosecutor's closing argument with regard to excessive comments on Petitioner's post-arrest silence and post-Miranda invocation of right to counsel. Petition at 10. Petitioner raised this claim in ground three of his Rule 3.850 motion. Ex. GGG at 721-22. The circuit court denied post conviction relief on this ground. Id. at

1249-50. Petitioner appealed the denial of his post conviction motion, and the 1st DCA per curiam affirmed. Ex. JJJ.

In their Response, Respondents identify the relevant trial testimony of Officer Monroe and the prosecutor's comments at issue. Response at 53-55. It will not be reiterated in full; however, a brief summary is edifying. Petitioner, upon his arrest, was interviewed by detectives. Ex. C at 535. Petitioner read and signed a constitutional rights form. Id. at 536-38. Officer Monroe testified as to the content of Petitioner's statement to the detectives. Id. at 539-40. Officer Monroe admitted that he did not follow-up on Petitioner's statement that he was at his girlfriend's house when the incident occurred, although Officer Monroe stated it was his responsibility as well as other detectives to conduct an investigation, and not that of an individual citizen to contact the police. Id. at 541. In June 2004, in a follow-up interview, Petitioner told Officer Monroe the name of Shantell Smith. Id. at 542. Officer Monroe testified he did not follow-up on this information. Id. In June 2004, Officer Monroe was not aware that the State Attorney's Office deposed Ms. Smith on May 25, 2004. Id. at 581.

Petitioner claims prosecutorial comments in closing argument warranted an objection by defense counsel, and he points to particular comments made during argument:

> Let's talk about the defendant's statement that he made on February 19th, 2004. This is the day of his arrest. Judge is going to instruct you to consider these out of court

- 21 -

statements with great caution, I suggest you
do that.

But I also remind you that in doing this
analysis that he was provided his
constitutional rights, he understood them, he
acknowledged them, and agreed to talk to them
for a certain period of time. In fact, this
is defense evidence piece number one.

What's so important about this
conversation is that it's got to be a case of
mistaken identity. He claims to have been at
his girlfriend's house, okay, that's what he
says, claims to have been at his girlfriend's
house. Not Sherronda Smith's house, not my
girlfriend's house on Harts Road which would
have just been as very easy to say, just my
girlfriend's house at this point and time.
And oh, by the way, if you want to ask me any
more questions talk to my lawyer.

Now [sic] got to ask yourself why
wouldn't he just flat out say right then and
there instead of girlfriend, why not say
Sherronda Smith? I submit to you the reason
is because at that point and time he hadn't
had the opportunity to talk to Miss Smith
about this, to set up this alibi, hadn't had
the chance. Figures, man, give up Sherronda
Smith now, by the time I can have an
opportunity to reach out to her, man, there's
a chance police would already talk to her. My
cover would be blown. Can't do that. So he
gives them girlfriend. That's why, how easy
would it have been just to say Sherronda
Smith, if that in fact is where he was the
night of the shooting?

Id. at 804-806.

The prosecutor went on to state there was more to the meaning

of the statement concerning the phone call from Karen Ayers,

referencing Jerry Strickland's testimony about calling Karen Ayers.

Id. at 806. The prosecutor stressed that Petitioner did not know

the information about two guys jumping on James Banks from a phone

call but due to actually being present in the house on Parker Street and having first-hand knowledge of the beating. Id. at 807-808.

Of note, the prosecutor did not use the invocation of right to counsel as substantive evidence of guilt. Instead, the prosecutor focused on the fact Petitioner did not specifically identify his girlfriend in his initial statement to the police and argued Petitioner had first-hand knowledge of Banks being jumped on by two guys at the house on Parker Street. As such, the record reflects the prosecutor's focus in closing was on the content of Petitioner's statement to the detectives, not on the actual invocation of right to representation and/or the right to remain silent. At most, during this portion of closing argument, the prosecutor, as an aside, mentioned Petitioner's invocation of rights when the prosecutor said: "[a]nd oh, by the way, if you want to ask me any more questions talk to my lawyer." Id. at 805.

There was no deficiency in counsel's performance because the prosecutor's comments were not improper as they were based on logical inferences based on witness testimony. The comments did not go directly to the invocation of the right to remain silent, nor were the comments so harmful as to require a new trial or so inflammatory that the jury reached a more severe verdict based on the comments. Thus, any failure on defense counsel's part to make an objection did not prejudice Petitioner. There is no reasonable probability that the outcome of the proceedings would have been

different had counsel objected to the comments Petitioner references under ground three.

Of importance, attorneys are allowed wide latitude during closing argument as they review evidence and explicate inferences which may reasonably be drawn from it. In order to establish a substantial error by counsel for failure to object to prosecutorial misconduct, the prosecutor's "comments must either deprive the defendant of a fair and impartial trial, materially contribute to the conviction, be so harmful or fundamentally tainted as to require a new trial, or be so inflammatory that they might have influenced the jury to reach a more severe verdict than it would have otherwise." <u>Walls v. State</u>, 926 So.2d 1156, 1167 (Fla. 2006) (per curiam) (citation omitted). Also, there must be a showing that there was no tactical reason for failure to object. <u>Id</u>. Without a showing of the above, a petitioner fails to demonstrate the requisite prejudice. <u>Id</u>.

In this case, the comments of the prosecutor did not deprive Petitioner of a fair and impartial trial. Also, they were not so inflammatory as to result in a more severe verdict than was demonstrated by the state's evidence. Upon review, there was substantial and very strong testimonial evidence presented at trial against Petitioner. In fact, both victims identified Petitioner as the perpetrator. Thus, any failure on defense counsel's part to object to the state's closing argument did not contribute significantly to the verdict.

Failure to object during closing argument rarely amounts to ineffective assistance of counsel, particularly if the errors, if any, are insubstantial. Here, at most, there was one, somewhat questionable comment made by the prosecutor and not objected to by defense counsel; however, error, if any, was insubstantial.

Petitioner appealed the denial of his Rule 3.850 motion. Pursuant to <u>Wilson</u>, it is assumed the 1st DCA adopted the reasoning of the trial court in denying the Rule 3.850 motion. The state has not attempted to rebut this presumption. Deference under AEDPA should be given to the last adjudication on the merits provided by the 1st DCA. Ex. JJJ. Upon review, the Florida court's decision is not inconsistent with Supreme Court precedent, including <u>Stickland</u> and its progeny. The state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the facts. As such, ground three is due to be denied.

### D. Ground Four

In his fourth ground, Petitioner raises a claim of the ineffective assistance of trial counsel for failure to object to the trial court's handling of a jury question and refusal to read-back Jerry Strickland's testimony. Petition at 12-13. Petitioner raised this issue in ground seven of his Rule 3.850 motion. Ex. GGG at 740-44. The trial court denied the post conviction motion, <u>id</u>. at 1249-50, and the 1st DCA affirmed per curiam. Ex. JJJ.

The record demonstrates, during deliberation, the jury sent a question: "is there a way to have read Strickland's testimony again." Ex. C at 840. The court immediately said: "[a]nd my answer would be no." Id. Defense counsel requested that the testimony be re-read. Id. The court responded, "I don't really think it's proper to reread one witness' testimony in its entirety and nobody else's." Id. Defense counsel commented that it had been done before in other trials. Id. The court responded that it had a real problem with doing so. Id. Defense counsel firmly stated she believed the jury is entitled to hear the testimony. Id. The court reiterated, "I have a problem rereading any testimony to them frankly. You always run into the problem then have we emphasized that testimony over everything else in the trial." Id. at 840-41.

After defense counsel clarified for the court that the requested testimony was the live testimony, the court said it does not usually do read-backs, and then denied the jury's request and denied counsel's request that the testimony be re-read. Id. at 841. The court told the jury:

> Ladies and gentlemen, you've sent me a request to have Mr. Strickland's testimony read again. And I can't do that. What you're suppose to do is each discuss your memory of what was said and what happened and try to come to some group agreement about what that testimony was.

Id.

Petitioner asserts that his counsel's performance was deficient because defense counsel failed to object after the court denied the request to have Mr. Strickland's testimony read back, leaving the matter unpreserved for direct appeal. Petition at 13.

Although Petitioner would have preferred that the jury be reminded of the content of Mr. Strickland's testimony, the court denied both the jury's request and counsel's separate request that the testimony be re-read. The court, in its answer to the jury's question, reminded the jury that they had to rely on the in-court testimony, by discussing "your memory of what was said and what happened" and coming to an agreement "about what that testimony was." Ex. C at 841.

Rule 3.410, Fla. R. Cr. P., provides that a court may, in its discretion, have portions of trial testimony read back to the jury upon request. At the time of Petitioner's trial, it was clear:

> Under Florida Rule of Criminal Procedure 3.410, the trial court has wide latitude in the area of reading testimony to the jury. Indeed, "[a] trial court need only answer questions of law, not of fact, when asked by a jury and has wide discretion in deciding whether to have testimony reread." Coleman v. State, 610 So.2d 1283, 1286 (Fla. 1992)(**no abuse of discretion found in refusing to reread testimony of witness and instructing jury to rely on collective memory of the evidence**). We find no abuse of discretion in the trial court's refusal to reread the first officer's testimony and instructing the jury to rely on its collective memory.

Infantes v. State, 941 So.2d 432, 434 (Fla. 3d DCA 2006).

Thus, this was a matter within the "wide discretion" of the trial court when presented with the question to have Mr. Strickland's testimony read back. <u>Adams v. State</u>, 122 So.3d 976, 979 (Fla. 2nd DCA 2013). Given this wide latitude, it was certainly in the province of the trial court to deny the jury's request and counsel's request for a read back and to instruct the jury to rely on collective memory.

More recently, and long after Petitioner's 2005 trial, the Florida Supreme Court, in <u>Hazuri v. State</u>, 91 So.3d 836, 846 (Fla. 2012) and <u>State v. Barrow</u>, 91 So.3d 826, 834 (Fla. 2012), adopted rules applicable to responding to jury requests for transcripts: (1) the court should not use any language misleading a jury into believing read-backs are prohibited, and (2) if denying a request for transcripts, the trial judge is to inform the jury of the possibility of a read-back. <u>See</u> <u>Delestre v. State</u>, 103 So.3d 1026, 1028 (Fla. 5th DCA 2012) (generally, a court's failure to inform the jury of a right to request a read-back is not considered fundamental error). But, "while a trial court has broad discretion in determining whether to grant a jury's read-back request, it may not, over objection, simply instruct the jurors to rely on their own collective recollection of the evidence so as to possibly mislead the jurors into believing that read-backs are prohibited." <u>Id</u>. at 1027 (citing <u>Hazuri</u>, 91 So.3d at 46; <u>Barrow</u>, 91 So.3d at 834).

Defense counsel specifically made a request that Strickland's testimony be read-back. The trial court denied counsel's request. The record demonstrates defense counsel did not agree with the trial court's proposed response, thus preserving possible error for appellate review. See Adams, 122 So.3d at 979. Although Petitioner's counsel did not use magic words to state her objection, she was adamant that the jury was entitled to hear the testimony read back. Here, the attorney's articulated concern was sufficiently specific to inform the trial court of the alleged error, and the trial court was fully aware that defense counsel disagreed with its actions, preserving the matter for appeal. Avila v. State, 781 So.2d 413, 415 (Fla. 4th DCA 2001).

Since the matter was preserved for appeal, counsel did not perform deficiently. Moreover, there was no prejudice, because even if counsel had used magic words, Petitioner has failed to demonstrate there is a reasonable probability that a more specific objection would have succeeded. Indeed, it is quite apparent from the trial court's announced position, it would not have been successful.

In short, counsel's performance was not deficient. Petitioner received effective representation, and counsel's performance did not so undermine the proper functioning of the adversarial process that Petitioner was deprived of a fair trial.

If there is any reasonable basis for the court to deny relief, the denial must be given deference. With regard to this claim of

ineffective assistance of counsel, AEDPA deference should be given to the state court's decision. The state court's ruling is well-supported by the record and by controlling case law, <u>Strickland</u> and its progeny. Petitioner raised the issue in his post conviction motion, the trial court denied the motion, finding Petitioner failed to establish either the performance prong or prejudice prong, and the appellate court affirmed. This Court concludes the state court's adjudication of this claim is not contrary to or an unreasonable application of <u>Strickland</u>, or based on an unreasonable determination of the facts. Petitioner is not entitled to habeas relief on ground four.

### E. Ground Five

In his fifth ground for relief, Petitioner raises a claim of the ineffective assistance of appellate counsel for failure to raise on appeal the trial court's error in denying the motion to dismiss information. Petition at 15. Petitioner exhausted this ground in the state court system by raising it as ground three of his petition alleging ineffective assistance of appellate counsel. Ex. H at 21-27. The 1st DCA denied this ground. Ex. M.

Upon review of the record, the state filed an information on March 9, 2004, and an amended information on April 7, 2005. Ex. A at 8-9, 82-83. The Arrest Report contains the sworn statement by a law enforcement officer, R. L. Jenkins. <u>Id</u>. at 1-2. It states:

> Affiant is a JSO Office[r] with 4 1/2 years
> experience. Affiant responded to the scene of
> a double shooting at 1700 Wambolt Street on

the evening of February 8th. I observed two male victims, one shot in the back, shoulder and elbow, and the other shot in the right thigh. Five or more witnessed [sic] were interviewed.

Based on the witness interviews, it was determined that the victims were initially parked at the side of the road in their vehicle when a white or silver Chevrolet Astro van pulled alongside. Witnesses described the black male suspect exiting the van from the passenger side and approaching the driver's side of the victims' vehicle. Multiple gunshots were heard and the suspect re-entered the Astro Van and then [the] van fled the scene.

Witnesses described the same vehicle returning to the scene briefly [a] few minutes later. Both victims were interviewed at Shands Hospital by homicide detectives, and each named the shooter as being known to them as "Fly." He was reported to have been armed with a black, semi-automatic pistol. I visited with victim one (still in the hospital, paralyzed from the waist down) and victim two at home, and showed each a photospread including the suspect's picture. Each victim chose the suspect's picture within three seconds, and stated the suspect was the shooter. JSO records also reflect that this suspect is known by the nickname "Fly."

The suspect was brought to the homicide office and interviewed by Det. Gupton and Det. Ford. The suspect was provided his constitutional rights by form and signed the form. The suspect advised detectives he understood his rights.

Detective Gupton advised the suspect he was wanted for an aggravated battery that occurred at Swift and Lamboll St. The suspect advised he was aware of the incident but he was not there. He advised he was at his girlfriends['] house when the incident occurred. He had knowledge of the incident because he had received a phone call and was

> told two guys jumped on another guy. The
> suspect again stated he was with his
> girlfriend and did not know why people were
> saying it was him.
>
> The suspect again said it was a case of
> mistaken identity and told detectives if he
> [sic] had any other questions for him we would
> have to ask his attorney.
>
> Detectives terminated the interview with the
> suspect.

Ex. A at 1-2.

The amended information is signed by Angela B. Corey,

Assistant State Attorney, and contains the following:

> Personally appeared before me, Angela B.
> Corey, Bar No. 0300942, Assistant State
> Attorney for the Fourth Judicial Circuit of
> the State of Florida, in and for Duval County,
> who is personally known to me, and who being
> duly first sworn, says that the allegations as
> set forth in the foregoing information are
> based upon facts that have been sworn to as
> true, and which, if true, would constitute the
> offense therein charged, and that this
> prosecution is instituted in good faith, and
> hereby **certifies that testimony under oath has
> been received from the material witness(es)
> for the offense.**

Id. at 82 (emphasis added).[5]

---

[5] Petitioner has not, and cannot, allege the amended
information fails to state a crime as the amended information
charges aggravated battery (two counts). Therefore, the trial
court was not deprived of jurisdiction. Assuming the amended
information had been dismissed, the state would have simply cured
the deficiency by filing a new information. Ford v. Campbell, 697
So.2d 1301, 1303 (Fla. 1st DCA 1997). As such, Petitioner cannot
demonstrate prejudice. See Alba v. State, 541 So.2d 747, 748 (Fla.
3d DCA 1989) (being tried upon an unsworn information is not error
sufficient to entitle a defendant to release from the charges
against him). The information includes the signature and oath of
an assistant state attorney required under Rule 3.140(g);

Based on all of the above, Petitioner is not entitled to habeas corpus relief on a claim of ineffective assistance of appellate counsel for failure to raise on appeal the trial court's error in denying the motion to dismiss information. The sworn oath of the prosecutor that she received testimony under oath from the material witness or witnesses for the offense is sufficient under Florida law. Bromell v. McNeil, No. 07-61917-CIV, 2008 WL 4540054, at *17 (S.D. Fla. Oct. 10, 2008); Ruiz v. Sec'y, Dep't of Corr., No. 8:06-cv-2086-T-17TGW, 2008 WL 786327, at *4-*5 (M.D. Fla. Mar. 20, 2008) (rejecting a claim of ineffective assistance of counsel for failure to move for dismissal based on a deficient information, unsupported by a sworn statement of a material witness). In State v. Perkins, 977 So.2d 643, 646 (Fla. 5th DCA 2008), the court explained that an assistant state attorney signing the information charging a felony does not have to personally administer the oath and question the material witness or witnesses upon which the charges are based, but must simply receive and consider the sworn testimony.

The record demonstrates Petitioner filed a pro se motion to dismiss the information. Ex. A at 41-45. At a hearing on the matter, the court discharged the public defender, at Petitioner's request, and appointed the public defender as stand-by counsel.

---

consequently, counsel had no basis on which to object to the information, and appellate counsel had no reason to include the claim on direct appeal. See Jones v. Barnes, 463 U.S. 745, 751 (1983) (counsel has no duty to raise a frivolous issue).

Id. at 231.  The court denied the motion to dismiss the information.  Id. at 231, 233-36.  Petitioner repeated his request to have the motion to dismiss granted.  Id. at 238-39.  The court denied the pro se motion for rehearing.  Id. at 239.  The 1st DCA dismissed the interlocutory appeal.  Ex. B.  Petitioner filed another motion to dismiss the information.  Ex. A at 75-77.  It too was denied.  Id. at 246-51.

It has been recognized, to prevail on a claim of ineffective assistance of appellate counsel, the burden is heavy.  A petitioner must:

> first show that his counsel was objectively unreasonable, see Strickland, 466 U.S., at 687-691, 104 S.Ct. 2052, in failing to find arguable issues to appeal—that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them. If [a petitioner] succeeds in such a showing, he then has the burden of demonstrating prejudice. That is, he must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal. See id., at 694, 104 S.Ct. 2052 (defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different").

Smith v. Robbins, 528 U.S. 259, 285-86 (2000).

Here, Petitioner has not satisfied the Strickland requirements with regard to this claim of ineffective assistance of appellate counsel.  He has not shown that the 1st DCA decided this claim in a manner contrary to Strickland, or that the 1st DCA's application

of Strickland was objectively unreasonable.  It is axiomatic, a defendant has a constitutional right to effective assistance of counsel on direct appeal, but "there is no constitutional duty to raise every nonfrivolous issue." Grossman v. Crosby, 359 F.Supp.2d 1233, 1261 (M.D. Fla. 2005) (citation omitted).  With respect to the underlying claim that the trial court erred in denying the motion to dismiss the information, appellate counsel could have reasonably decided to winnow out this weaker argument.

Upon the filing of Petitioner's state petition for writ of habeas corpus, Ex. H, the 1st DCA reviewed Petitioner's arguments concerning claims Petitioner argued his appellate counsel should have raised on direct appeal, and the 1st DCA denied this claim, finding it to be without merit, thus making its determination that no appellate relief would have been forthcoming on this particular ground.  Ex. M at 3.  Thus, Petitioner has failed to show a reasonable probability the outcome of the direct appeal would have been different had appellate counsel argued as Petitioner's suggests appellate counsel should have on direct appeal.

The denial of relief on the ineffective assistance of appellate counsel claim was neither contrary to, nor an unreasonable application of Strickland.  Therefore, Petitioner is not entitled to habeas relief on ground five.

### F.  Ground Six

In ground six, Petitioner raises another claim of ineffective assistance of appellate counsel, claiming his appellate counsel was ineffective for failure to timely raise a sentencing issue on appeal. Petition at 17. Respondents succinctly describe the claim:

> Petitioner alleges that appellate counsel, specifically Charles Fletcher, was ineffective by failing to timely argue in the second appeal that the mandatory minimum life sentence on Count I is erroneous. Petitioner asserts that under law in effect at the time of his first appeal and second appeal his minimum mandatory life sentence was erroneous. Petitioner asserts that by the time of the third appeal, the Florida Supreme Court had decided that life imprisonment is proper.

Response at 75.

In this ground, Petitioner challenges the performance of appellate counsel Charles Fletcher, appointed for the second appeal. The First District Court of Appeal found he failed to preserve a sentencing issue by filing a Rule 3.800(b)(2) motion in the trial court. However, a claim of ineffective assistance of Mr. Fletcher was not before the 1st DCA and the 1st DCA did not find Mr. Fletcher ineffective under the <u>Strickland</u> two-pronged standard, or under any other standard. Instead, the 1st DCA found counsel misunderstood its previous ruling:

> The defendant prevailed on a claim of ineffective assistance of appellate counsel in a previous appearance before this court, <u>see</u> <u>Flowers v. State</u>, 695 So.2d 1233 (Fla. 1st DCA 2007), and he was granted a new direct appeal

on two issues: whether the trial court failed to conduct a proper hearing under <u>Nelson v. State</u>, 274 So.2d 256 (Fla. 4th DCA 1973), and whether his sentence was illegal. He is now before the court on the new direct appeal. We affirm as to the <u>Nelson</u> issue but grant him a new direct appeal, once again, on the sentencing issue.

In our previous opinion, we concluded that the defendant would have had a reasonable probability of success in his original direct appeal on a sentencing issue, but that he did not receive effective assistance of counsel, because the lawyer appointed to represent him on appeal failed to preserve the issue by filing a motion under rule 3.800(b)(2) of the Florida Rules of Criminal Procedure. We explained that we could not decide the sentencing issue on the merits, because it had not yet been presented to the trial court.

The appellate lawyer representing the defendant in the present appeal argued that the previous appellate lawyer was ineffective. However, that issue was determined in the prior opinion of this court. Evidently, the lawyer representing the defendant in the present appeal misunderstood our previous opinion. He did not preserve the sentencing issue for review on the merits by filing a rule 3.800(b)(2) motion in the trial court. As a consequence of this apparent misunderstanding, appellate counsel failed to cure the deficiency identified in the opinion. The posture of the case remains the same: the defendant still has a reasonable possibility of success on a sentencing issue that has not yet been preserved for review on appeal.

Ex. MM at 1-2.

With that, on March 31, 2010, the 1st DCA affirmed in part and remanded the case.[6]  Id. at 3.  For the third appeal, Ryan Truskoski, new appellate counsel, filed a motion to correct on January 12, 2011, but he pointed out that his argument that the minimum mandatory of life imprisonment was too high had been cast into doubt by Mendenhall v. State, 48 So.3d 740 (Fla. 2010) (per curiam) (Mendenhall).  Ex. TT at 3.  The trial court denied the motion to correct, relying on Mendenhall.  Ex. TT at 5-8.  Mr. Truskoski filed an appeal brief, again recognizing the adverse decision of Mendenhall.  Ex. UU.  On September 16, 2011, the 1st

---

[6] The record demonstrates, the 1st DCA, on September 28, 2007, granted Petitioner's claim of ineffective assistance of appellate counsel, Marjorie C. Holladay, an Assistant Public Defender, and stated the court would refrain from concluding the sentence was illegal, but opined: "there does appear to be a reasonable probability that petitioner's Yasin [v. State, 896 So.2d 875 (Fla. 5th DCA 2005) (finding a 10/20/life sentence of 25 years followed by 20 years of probation was not proper because the 10/20/life provision while authorizing a mandatory sentence in excess of the statutory maximum did not change the statutory maximum for other purposes, making it improper to tack on the 20-year probationary term)] challenge will ultimately result in a more favorable sentence."  Ex. M at 2.  By the time of the second appeal, however, the 5th DCA had rejected the extension of Yasin's holding to include the claim that the 10/20/life minimum mandatory must fit within the statutory maximum of 30 years.  See Mendenhall v. State, 999 So.2d 665 (Fla. 5th DCA December 5, 2008) (finding the 10/20/life statute allows the trial court the discretion to impose a minimum mandatory from 25 years to life regardless of the statutory maximum), and the 1st DCA's projection of the reasonable probability of success on Petitioner's sentencing claim had already been cast into doubt.  See Ex. DD, Answer Brief of Appellee at 8-11 (dated May 1, 2009).

DCA affirmed Petitioner's life sentence, with a minimum mandatory of life, for aggravated battery with a firearm. Ex. WW at 4.

Respondents assert Petitioner's claim of ineffective assistance of Mr. Fletcher is not properly exhausted. Response at 76. Upon review, the Court first finds the claim is unexhausted and procedurally defaulted. The record shows Petitioner did not file a petition for writ of habeas corpus in the state appellate court claiming the ineffective assistance of Mr. Fletcher. Petitioner filed one petition for writ of habeas corpus in the 1st DCA, Ex. H, and it concerned the performance of Ms. Holladay, the Assistant Public Defender appointed for the first appeal. Although the 1st DCA found Mr. Fletcher misunderstood its first opinion on direct appeal, the appellate court was not addressing any assertion of Mr. Fletcher's ineffectiveness. As such, Respondents submit, the claim has not been properly exhausted and is procedurally barred.

Ordinarily, a petitioner must exhaust state court remedies prior to presenting a claim to this Court:

> An applicant's federal writ of habeas corpus will not be granted unless the applicant exhausted his state court remedies. 28 U.S.C. § 2254(b), (c). A claim must be presented to the highest court of the state to satisfy the exhaustion requirement. O'Sullivan v. Boerckel, 526 U.S. 838 (1999) ; Richardson v. Procunier, 762 F.2d 429, 430(5th Cir. 1985); Carter v. Estelle, 677 F.2d 427, 443(5th Cir. 1982). In a Florida non-capital case, this means the applicant must have

presented his claims in a district court of appeal. <u>Upshaw v. Singletary</u>, 70 F.3d 576, 579 (11th Cir. 1995). The claims must be presented in State court in a procedurally correct manner. <u>Id</u>. Moreover, the habeas applicant must have presented the State courts with the same federal constitutional claim that is being asserted in the habeas petition. "It is not sufficient merely that the federal habeas petitioner has been through the state courts ... nor is it sufficient that all the facts necessary to support the claim were before the state courts or that a somewhat similar state-law claim was made." <u>Kelley v. Sec'y, Dep't of Corr.</u>, 377 F.3d 1317 (11th Cir. 2004) (citing <u>Picard v. Connor</u>, 404 U.S. 270, 275-76 (1971)); <u>Anderson v. Harless</u>, 459 U.S. 4, 6 (1982). A petitioner is required to present his claims to the state courts such that the courts have the "opportunity to apply controlling legal principles to the facts bearing upon [his] constitutional claim." <u>Picard v. Connor</u>, 404 U.S. 270, 275-77 (1971). To satisfy this requirement, "[a] petitioner must alert state courts to any federal claims to allow the state courts an opportunity to review and correct the claimed violations of his federal rights." <u>Jimenez v. Fla. Dep't of Corr.</u>, 481 F.3d 1337 (11th Cir. 2007) (citing <u>Duncan v. Henry</u>, 513 U.S. 364, 365 (1995).) "Thus, to exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues." <u>Snowden v. Singletary</u>, 135 F.3d 732, 735 (11th Cir. 1998).

<u>Aquilera v. Jones</u>, No. 15-CV-20406, 2016 WL 791506, at *7 (S.D. Fla. Jan. 13, 2016), <u>report</u> <u>and</u> <u>recommendation</u> <u>adopted</u> <u>by</u> No. 15-20406-CIV, 2016 WL 932808 (S.D. Fla. Mar. 10, 2016).

There are allowable exceptions to the procedural default doctrine; "[a] prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a

violation of federal law." Martinez v. Ryan, 566 U.S. 1, 10 (citing Coleman v. Thompson, 501 U.S. 722, 750 (1991)). Petitioner has not shown cause and prejudice nor a manifest injustice will result if this claim is not addressed its merits. Although a petitioner may obtain review of the merits of a procedurally barred claim if he satisfies the actual innocence "gateway" established in Schlup v. Delo, 513 U.S. 298 (1995), Petitioner has not done so. The gateway is meant to prevent a constitutional error at trial from causing a miscarriage of justice and "'the conviction of one who is actually innocent of the crime.'" Kuenzel v. Comm'r, Ala. Dep't of Corr., 690 F.3d 1311, 1314 (11th Cir. 2012) (per curiam) (quoting Schlup, 513 U.S. at 324), cert. denied, 569 U.S. 1004 (2013). The fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "'actual' innocence" rather than mere "'legal' innocence." Johnson v. Ala., 256 F.3d 1156, 1171 (11th Cir. 2001) (citations omitted), cert. denied, 535 U.S. 926 (2002). With respect to this unexhausted ground, Petitioner has failed to identify any fact warranting the application of the fundamental miscarriage of justice exception.

In light of the above, the Court finds ground six is unexhausted and procedurally defaulted. The claim is also procedurally defaulted as it is abundantly clear that this unexhausted claim would be procedurally barred in state court. As Petitioner has failed to establish cause and prejudice or any

factors warranting the application of the fundamental miscarriage of justice exception to overcome the default, ground six is procedurally barred and due to be denied as barred.

Alternatively, this claim has no merit. Although the 1st DCA stated there was a reasonable probability that Petitioner's <u>Yasin</u> challenge asking that <u>Yasin</u> be construed to include a challenge to the mandatory minimum term of life and result in a more favorable sentence, the Florida Supreme Court rejected a similar contention and found the specific provisions of the 10-20-life statute concerning mandatory minimums control over the general provisions of section 775.087, Florida Statutes, <u>Mendenhall</u>, 48 So.3d at 742, thus affirming a trial court's discretion to impose a mandatory minimum of 25 years to life, even if the mandatory minimum exceeds the statutory maximum. In doing so, the Florida Supreme Court affirmed the decision of <u>Mendenhall</u>, 999 So.2d 665, a case relied upon by the state in response to Petitioner's second appeal. Ex. DD at 8-11. As noted by Respondents, Petitioner would not have prevailed on a claim of ineffective assistance of Mr. Fletcher for failure to properly preserve and raise an ultimately unsuccessful proposition, and no prejudice has been demonstrated. Response at 79. Petitioner's sixth ground is due to be denied.

## G. Grounds Seven, Twelve, and Thirteen

Grounds seven, twelve, and thirteen are unexhausted and procedurally defaulted. Petitioner blames his failure to exhaust

his state court remedies on the fact that he had no counsel to prepare his postconviction motion. Reply at 63. Petitioner also seems to be relying on the fact he requested a stay and abeyance to exhaust his state court remedies to excuse his default. Reply at 62-63.

The record shows, after Petitioner filed his initial petition (Doc. 1), this Court gave Petitioner the opportunity to file a notice of abandonment with respect to his unexhausted claims or file a motion to stay and abeyance. Order (Doc. 2). Petitioner sought a stay and abeyance (Doc. 3). The Court found: "Petitioner has demonstrated good cause for his failure to exhaust his claims in state court as he has apparently exhausted half of his claims and is attempting to exhaust the remaining grounds." Order (Doc. 5 at 2). The Court further noted Petitioner was attempting to raise claims of ineffective assistance of counsel, "potentially meritorious claims," and there was no evidence of intentional dilatory tactics. Id. The Court granted the requested stay and abeyance. Id. at 2-3.

Petitioner filed the issues raised in grounds seven, twelve, and thirteen in a successive Rule 3.850 motion, but the trial court found the motion to be untimely filed. Although this Court granted the stay and abeyance of the federal case, Petitioner did not meet the state's procedural requirements in his attempt to exhaust state court remedies.

The record demonstrates that grounds seven, twelve, and thirteen were raised in a Rule 3.850 motion filed on May 19, 2016, Ex. LLL at 4-6, 21-24, and the trial court dismissed the motion as untimely filed. <u>Id</u>. at 61-85. The 1st DCA affirmed per curiam, without a written opinion. Ex. PPP. The mandate issued September 22, 2017. Ex. QQQ. The state court's determination rested clearly and expressly on a state procedural bar. <u>Alderman v. Zant</u>, 22 F.3d 1541, 1549 (11th Cir.), <u>cert</u>. <u>denied</u>, 513 U.S. 1061 (1994). <u>See</u> <u>Whiddon v. Dugger</u>, 894 F.2d 1266 (11th Cir. 1990) (a late filing beyond the two-year time limit of Rule 3.850 is a procedural default), <u>cert</u>. <u>denied</u>, 498 U.S. 834 (1990). "A procedural default bars the consideration of the merits of an issue in federal court only when the state court itself applies the procedural default rule." <u>Dobbert v. Strickland</u>, 718 F.2d 1518, 1524 (11th Cir. 1983) (per curiam) (citation omitted), <u>cert</u>. <u>denied</u>, 468 U.S. 1220 (1984). Here, the state court expressly applied the procedural default rule.

In addressing the question of exhaustion, this Court must ask whether Petitioner's claims were fairly raised in the state court proceedings:

> Before seeking § 2254 habeas relief in federal court, a petitioner must exhaust all state court remedies available for challenging his conviction. <u>See</u> 28 U.S.C. § 2254(b), (c). For a federal claim to be exhausted, the petitioner must have "fairly presented [it] to the state courts." <u>McNair v. Campbell</u>, 416

F.3d 1291, 1302 (11th Cir. 2005). The Supreme
Court has suggested that a litigant could do
so by including in his claim before the state
appellate court "the federal source of law on
which he relies or a case deciding such a
claim on federal grounds, or by simply
labeling the claim 'federal.'" Baldwin v.
Reese, 541 U.S. 27, 32, 124 S.Ct. 1347, 158
L.Ed.2d 64 (2004). The Court's guidance in
Baldwin "must be applied with common sense and
in light of the purpose underlying the
exhaustion requirement"—namely, giving the
state courts "a meaningful opportunity" to
address the federal claim. McNair, 416 F.3d at
1302. Thus, a petitioner could not satisfy the
exhaustion requirement merely by presenting
the state court with "all the facts necessary
to support the claim," or by making a
"somewhat similar state-law claim." Kelley,
377 F.3d at 1343-44. Rather, he must make his
claims in a manner that provides the state
courts with "the opportunity to apply
controlling legal principles to the facts
bearing upon (his) [federal] constitutional
claim." Id. at 1344 (quotation omitted).

Lucas v. Sec'y, Dep't of Corr., 682 F.3d 1342, 1351-52 (11th Cir.
2012), cert. denied, 568 U.S. 1104 (2013).  Of course, in this
instance, the claims were not fairly and timely raised in the state
court proceedings.

The doctrine of procedural default requires the following:

Federal habeas courts reviewing the
constitutionality of a state prisoner's
conviction and sentence are guided by rules
designed to ensure that state-court judgments
are accorded the finality and respect
necessary to preserve the integrity of legal
proceedings within our system of federalism.
These rules include the doctrine of procedural
default, under which a federal court will not
review the merits of claims, including
constitutional claims, that a state court

declined to hear because the prisoner failed to abide by a state procedural rule. <u>See</u>, <u>e.g.</u>, <u>Coleman</u>, <u>supra</u>, at 747–748, 111 S.Ct. 2546; <u>Sykes</u>, <u>supra</u>, at 84–85, 97 S.Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. <u>See</u>, <u>e.g.</u>, <u>Walker v. Martin</u>, 562 U.S. ----, ----, 131 S.Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); <u>Beard v. Kindler</u>, 558 U.S. ----, ----, 130 S.Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. <u>See</u> <u>Coleman</u>, 501 U.S., at 750, 111 S.Ct. 2546.

<u>Martinez</u>, 566 U.S. at 9-10.

In <u>Martinez</u>, the Supreme Court expanded the "cause" that may excuse a procedural default. <u>Id</u>. at 9. The Supreme Court explained:

Allowing a federal habeas court to hear a claim of ineffective assistance of trial counsel when an attorney's errors (or the absence of an attorney) caused a procedural default in an initial-review collateral proceeding acknowledges, as an equitable matter, that the initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel, may not have been sufficient to ensure that proper consideration was given to a substantial claim. From this it follows that, when a State requires a prisoner to raise an [ineffective assistance of trial counsel] claim in a collateral proceeding, a prisoner may establish cause for a default of an ineffective-assistance claim in two

circumstances. The first is where the state
courts did not appoint counsel in the
initial-review collateral proceeding for a
claim of ineffective assistance at trial. The
second is where appointed counsel in the
initial-review collateral proceeding, where
the claim should have been raised, was
ineffective under the standards of <u>Strickland
v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052,
80 L.Ed.2d 674 (1984). To overcome the
default, a prisoner must also demonstrate that
the underlying [ineffective assistance of
trial counsel] claim is a substantial one,
which is to say that the prisoner must
demonstrate that the claim has some merit. <u>Cf</u>.
<u>Miller-El v. Cockrell</u>, 537 U.S. 322, 123 S.Ct.
1029, 154 L.Ed.2d 931 (2003) (describing
standards for certificates of appealability to
issue).

<u>Martinez</u>, 566 U.S. at 14.

Respondents assert that grounds seven, twelve, and thirteen
are unexhausted and procedurally defaulted and must be denied as
such. After giving due consideration to this assertion, the Court
finds that grounds seven, twelve, and thirteen are unexhausted
because Petitioner failed to fairly and properly raise these claims
in the state court system, thus the trial court never considered
the merits of these claims.

Procedural defaults may be excused under certain
circumstances; "[a] petitioner who fails to exhaust his claim is
procedurally barred from pursuing that claim on habeas review in
federal court unless he shows either cause for and actual prejudice
from the default or a fundamental miscarriage of justice from
applying the default." <u>Lucas</u>, 682 F.3d at 1353 (citing <u>Bailey v.</u>

Nagle, 172 F.3d 1299, 1306 (11th Cir. 1999) (per curiam)). The fundamental miscarriage of justice exception is only available in extraordinary cases upon a showing of "'actual' innocence" rather than mere "'legal' innocence." Johnson, 256 F.3d at 1171 (citations omitted).

Petitioner did not properly and/or timely present these federal constitutional claims to the state courts. Any further attempts to seek post conviction relief in the state courts on these grounds will be unavailing. As such, he has procedurally defaulted grounds seven, twelve, and thirteen claiming ineffective assistance of counsel.

In his Reply, Petitioner submits this procedural default should be excused because he meets the narrow exception under Martinez. Reply at 63. See Motion to Stay and Request That Petition Be Place[d] in Abeyance (Doc. 3 at 1-2). In order to overcome his default, Petitioner must demonstrate that the underlying ineffectiveness claims are substantial. Indeed, "[t]o overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." Martinez, 566 U.S. at 14 (citation omitted).

As discussed in the alternative merits analysis that follows, the ineffectiveness claims raised in grounds seven, twelve, and

thirteen lack any merit.  Therefore, Petitioner has not shown that

he can satisfy an exception to the bar.  A discussion follows.

In ground seven of the Petition, Petitioner claims his counsel

was ineffective for the failure to call Sgt. Butler as a defense

witness.  Petition at 20.  The record demonstrates that the state

called Officer Christina Rosario to testify as to her encounter

with the victim, Mr. Strickland.  Ms. Rosario attested that Mr.

Strickland was on his cell phone talking and screaming.  Ex. C at

399.  Ms. Rosario said she called rescue and rescue first attended

to the victim in the car who was very seriously injured.  _Id_.

While waiting for rescue, Mr. Strickland was making statements and

told Officer Rosario, "Fly shot him."  _Id_.

Plaintiff asserts that his counsel's performance was deficient

for failing to call Sgt. Butler, the supervisor on the scene, who

would have testified that Mr. Strickland never gave helpful

information during the investigation that night, nor did he

identify the shooter by name.  Petition at 20.  Petitioner contends

that Sgt. Butler should have been called to impeach Officer

Rosario's testimony.

Upon review of the portion of Sgt. Butler's deposition

submitted to the Court by Petitioner, Sgt. Butler was not in the

best position to hear Mr. Strickland's statements.  Sgt. Butler

said:

Well, where I was standing, Officer Rosario was closer to him than what I was in trying to get the rescue units down to him. And I was pretty much, I was back away from him a little bit, but I was still watching what was going on between her and him. And I just remember that he was on a cell phone, and he said something along the lines or kept saying that he had been shot.

Petitioner's Appendix D at 43-44 (Doc. 14-4).

Thus, based on Sgt. Butler's deposition testimony, Officer Rosario was closer to the victim and was in the best position to hear Mr. Strickland's statements. Sgt. Butler was further away and busy attempting to get the rescue units down to Mr. Strickland. Sgt. Butler said they (the officers) obtained the name of Michael Flowers, but he did not recall how they obtained the name. Id. at 39.

Based on a review of the portion of the deposition provided, defense counsel's performance was not deficient for failing to call Sgt. Butler, the supervisor at the scene, as he could not recall how the officers obtained the name of Michael Flowers ("Fly"). Moreover, Sgt. Butler was not the officer closest in proximity to the victim. Sgt. Butler said he was dealing with getting rescue personnel to Mr. Strickland, suggesting his attention was directed to other, more urgent matters.

The Court is not convinced that ground seven has some merit. As such, Petitioner has failed to show that he falls within the narrow parameters of the ruling in Martinez, in which the Supreme

Court recognized a narrow exception for ineffective assistance of counsel/absence of counsel at initial-review collateral proceedings. Since Petitioner has failed to demonstrate that the underlying ineffective assistance of counsel claim is a substantial one, he does not fall within this narrow exception. Thus, he has failed to establish cause for the procedural default of his claim of ineffective assistance of trial counsel raised in ground seven of the Petition.

In ground twelve of the Petition, Petitioner claims his counsel was ineffective for failure to obtain Petitioner's phone records and present the records at trial to support the alibi defense. Petition at 33. In the supporting facts, Petitioner states he made several phone calls and received several phone calls the evening of February 8, 2004, and counsel could have shown the cell tower used to send and receive calls was in proximity to Shantell Smith's residence, not twenty minutes away at the scene of the shooting. Id.

Again, the Court is not convinced that counsel's performance was deficient for failing to obtain phone records for Petitioner's cell phone. Of import, even if Petitioner's cell phone was located at Shantell Smith's residence, that does not mean Petitioner was also at the residence. Indeed, phone records would not have shown who was speaking on the phone or who actually had possession of the phone. The records would simply show the phone was used to send

and/or receive calls. Also, it is important to recognize that counsel did have the person who was able to provide alibi testimony testify at trial: Shantell Smith. Counsel's decision to call the person best able to support the alibi defense does not amount to deficient performance. The Court is not convinced that ground twelve has some merit. Therefore, Petitioner has failed to show that he falls within the narrow parameters of the ruling in Martinez. Since Petitioner has failed to demonstrate that the underlying ineffective assistance of counsel claim is a substantial one, he does not fall within this narrow exception. Thus, he has failed to establish cause for the procedural default of his claim of ineffective assistance of trial counsel raised in ground twelve of the Petition.

In ground thirteen, Petitioner raises a claim of the ineffective assistance of counsel for failure to object to a sleeping juror, Ms. Batton. Petition at 35. Petitioner claims that while defense counsel was cross examining the victims, Mr. Strickland and Mr. Johnson, Ms. Batton was sleeping, as evidenced by the fact that the juror was rocking back and forth with her eyes closed. Id. Petitioner states he wrote counsel a note about Ms. Batton's actions, counsel appeared to look at the note, and she held up an index finger. Id. Petitioner contends counsel's performance was deficient for failing to object and move for a mistrial. Id. Petitioner asserts, upon objection, the trial court

would have declared a mistrial as there was no remaining alternate. Id.

The Court has carefully reviewed the entire trial record and there is no evidence of a sleeping juror in the record. The trial judge, as keeper of decorum in the courtroom, would be watching the jurors to determine if anyone was sleeping, otherwise distracted, or causing a disruption in the courtroom. Additionally, both the prosecutor and defense counsel would be watching and assessing the alertness of jurors, making sure that no one slept through the proceedings. Petitioner's description of Ms. Batton, rocking back and forth with her eyes closed, does not support his conclusion that Ms. Batton was sleeping. Clearly, the described movement exhibits alertness on the part of the juror.

Notably, the record shows Mr. Johnson was the first witness (by video) and Mr. Strickland was the third witness called by the state. Thus, the victims' testimony came at the inception of the trial testimony, after opening statements. Also, it is important to note that Petitioner claims counsel looked at the note and held up her finger, acknowledging Petitioner and his note, while indicating Petitioner should wait, and apparently making a decision not to pursue the issue or make an objection as evidenced by her non-action and lack of objection.

Here, the matter of a juror being briefly inattentive or resting her eyes did not prompt counsel to make an objection or

seek a curative instruction. Under these circumstances, defense counsel's performance cannot be deemed deficient. On this record, Petitioner has failed to carry his burden of showing that his counsel's representation fell outside that wide range of reasonably professional assistance. Even if counsel had objected, at most, under the circumstances described, with a juror rocking back and forth with her eyes closed, the judge would likely have instructed the jury to stay alert and perhaps offer a comfort break. The Court is certainly not convinced a juror would have been excused for rocking back and forth and closing her eyes, nor would a mistrial have been declared. As such, Petitioner has neither shown deficient performance or prejudice.

In sum, the Court is not convinced that ground thirteen has some merit. Therefore, Petitioner has failed to show that he falls within the narrow parameters of the ruling in Martinez. Since Petitioner has failed to demonstrate that the underlying ineffective assistance of counsel claim is a substantial one, he does not fall within the narrow Martinez exception. Thus, he has failed to establish cause for the procedural default of his claim of ineffective assistance of trial counsel raised in ground thirteen of the Petition. Procedural default prohibits consideration of grounds seven, twelve, and thirteen. As such, these grounds are due to be denied as barred.

## H.  Remaining Grounds

The remaining grounds, (8) the ineffective assistance of counsel for failure to request a cautionary instruction on reliability of identification; (9) the ineffective assistance of counsel for failure to file a motion to suppress Petitioner's identification based on an impermissibly suggestive photo line-up; (10) the ineffective assistance of counsel for failure to investigate and introduce reverse Williams' rule evidence; (11) the ineffective assistance of counsel for failure to object to prosecutorial misconduct during closing argument; and (14) the cumulative effect of trial counsel's errors rendered counsel's assistance ineffective and deprived Petitioner of a fair trial, are procedurally defaulted. The Court will provide a brief, relevant procedural history to provide context for its decision.

On October 6, 2011, Petitioner filed an extremely lengthy Rule 3.850 motion and a motion to accept the motion in excess of the 50-page limit set forth in Rule 3.850. Ex. YY at 1-87; Ex. ZZ. The trial court, on May 7, 2012, dismissed the motion, finding it violated the fifty-page limit as set forth in Rule 3.850(c), Fla. R. Crim. P. Ex. YY at 88–89. The trial court dismissed the motion without prejudice for Petitioner to re-file "a proper and timely Rule 3.850 motion." _Id_. at 88. On January 28, 2013, Petitioner filed a belated motion for rehearing, asserting the court overlooked his motion to accept. Ex. AAA at 1-15. The trial

court, in an order docketed on April 24, 2013, denied the motion. Id. at 16-17.

Meanwhile, on May 16, 2012, Petitioner filed a forty-five-page amended Rule 3.850 motion raising eight grounds of ineffective assistance of counsel. Ex. YY at 180-227. However, on May 22, 2012, he filed a thirty-eight-page supplemental Rule 3.850 motion raising an additional five grounds of ineffective assistance of counsel and one claim of cumulative error of counsel. Id. at 228-69. The trial court dismissed the Rule 3.850 motion and its supplement, finding Petitioner's attempt to circumvent the fifty-page limit by splitting his document into two parts was unacceptable, noting Petitioner had not received leave of court to exceed the fifty-page limit. Id. at 270-72. The court dismissed the motion without prejudice with leave to amend. Id. at 271.

Petitioner appealed the dismissal of his motion and supplement. Id. at 363-64. After briefing (Ex. BBB; Ex. CCC; Ex. DDD), the 1st DCA granted the state's motion to dismiss the appeal. Ex. EEE. The mandate issued on September 24, 2013. Ex. FFF.

On September 5, 2013, Petitioner filed an amended Rule 3.850 motion raising eight claims of ineffective assistance of counsel. Ex. GGG at 703-51. On September 9, 2013, Petitioner sought an extension of time to file a supplemental motion beyond the two-year time period. Id. at 752-55. He also filed a motion for leave to supplement to raise an additional six claims of ineffective

assistance of counsel.  Id. at 757-60.  On October 10, 2013,
Petitioner filed an appendix in support of his motion.  Id. at 764-
1061.  In an order filed February 22, 2014, the trial court, once
again, denied Petitioner's request for leave to file a Rule 3.850
motion in excess of fifty pages.  Id. at 1066-68.  The court found
Petitioner timely sought to include additional grounds, so the
court permitted Petitioner to amend the pending amended Rule 3.850
motion beyond the two-year limitation period.  Id. at 1067.

The trial court explained:

> In addition to the restriction on page
> limits, the Defendant is also required to give
> "a *brief* statement of the facts and other
> conditions relied on in support of the
> motion."  Fla. R. Crim. P. 3.850(c)(7)
> (emphasis added).  **The Defendant has not shown
> how summarizing his claims, in compliance with
> the requirement of brevity, will force him to
> omit any of the six grounds.**  Therefore, the
> Defendant has not shown good cause for
> exceeding the page limit established at
> Florida Rule of Criminal Procedure 3.850(d).
> However, because the Defendant timely sought
> to include the additional grounds in his
> Amended Motion, the Defendant is permitted to
> amend the pending Amended Motion beyond the
> two year time limit for filing claims for
> relief. . . .

Ex. GGG at 1067 (emphasis added).

Petitioner moved for rehearing.  Id. at 1079-84.  The state
responded, attaching portions of the record in response.  Id. at
1092-1243.  In an Order Denying Defendant's Amended Motion for
Post-Conviction Relief, filed on June 26, 2015, the trial court

denied the eight claims of ineffective assistance of counsel raised in the amended motion, attaching portions of the record. <u>Id</u>. at 1249-1403. Petitioner appealed. Ex. HHH; Ex. III. The 1st DCA, on February 12, 2016, per curiam affirmed. Ex. JJJ. The mandate issued on March 9, 2016. Ex. KKK.

As such, ground eight was raised in the supplemental post conviction motion which was never accepted by the trial court. Petitioner attempted to raise the claim in a successive post conviction motion filed on May 19, 2016, Ex. LLL at 7-9, however, the trial court dismissed the motion as untimely filed, beyond the two-year time limit. <u>Id</u>. at 61-85. Petitioner appealed, Ex. OOO, and the 1st DCA affirmed per curiam on August 25, 2017. Ex. PPP. The mandate issued on September 22, 2017. Ex. QQQ.

The state court's determination rested clearly and expressly on a state procedural bar. <u>Alderman</u>, 22 F.3d at 1549. <u>See</u> <u>Whiddon</u>, 894 F.2d at 1266 (a late filing beyond the two-year time limit of Rule 3.850 is a procedural default). The state court's application of the procedural default rule bars this Court's consideration of the merits of ground eight. <u>Dobbert</u>, 718 F.2d at 1524. The same is true of grounds nine, ten, eleven, and fourteen. These claims were all raised in the post conviction motion dismissed as untimely filed beyond the two-year limitation period. Ex. LLL at 10-12, 13-15, 16-21, 25-27, 61-63. The 1st DCA affirmed the trial court's ruling on appeal. Ex. PPP. As such, procedural

default bars consideration of the merits of grounds nine, ten, eleven, and fourteen as well.

Petitioner has not demonstrated cause and prejudice or a fundamental miscarriage of just will result if the merits of these claims are not addressed by the Court. Thus, the Court finds grounds eight, nine, ten, eleven, and fourteen are barred from federal habeas review.

## I.  Fourteenth Amendment

To the extent Petitioner is claiming trial counsel's errors deprived Petitioner of a fair trial in violation of the Fourteenth Amendment's Due Process Clause, the Court concludes he is not entitled to habeas relief.  In the Petition, Petitioner presented insufficient separate and individual ineffective assistance of counsel claims; therefore, even considered cumulatively, these assertions do not render the claim of ineffective assistance of counsel sufficient.  Robertson v. Chase, No. 1:07-CV-0797-RWS, 2011 WL 7629549, at *23 (N.D. Ga. Aug. 12, 2011) (citations omitted), report and recommendation adopted by No. 1:07-CV-797-RWS, 2012 WL 1038568 (N.D. Ga. Mar. 26, 2012), aff'd by 506 F. App'x 951 (11th Cir. 2013), cert. denied, 571 U.S. 842 (2013).  As such, Petitioner is not entitled to habeas relief.

In considering a claim of cumulative error under the cumulative error doctrine, the district court considers whether:

> "an aggregation of non-reversible errors
> (i.e., plain errors failing to necessitate
> reversal and harmless errors) can yield a
> denial of the constitutional right to a fair
> trial, which calls for reversal." <u>United
> States v. Baker</u>, 432 F.3d 1189, 1223 (11th
> Cir. 2005) (internal quotation marks omitted).
> We address claims of cumulative error by first
> considering the validity of each claim
> individually, and then examining any errors
> that we find in the aggregate and in light of
> the trial as a whole to determine whether the
> appellant was afforded a fundamentally fair
> trial. <u>See</u> <u>United States v. Calderon</u>, 127 F.3d
> 1314, 1333 (11th Cir. 1997).

<u>Morris v. Sec'y, Dept. of Corr.</u>, 677 F.3d 1117, 1132 (11th Cir. 2012). In <u>Forrest v. Fla. Dep't of Corr.</u>, 342 F. App'x 560, 564 (11th Cir. 2009) (per curiam) (citing <u>United States v. Cronic</u>, 466 U.S. 648, 659 n.26 (1984)), <u>cert</u>. <u>denied</u>, 562 U.S. 589 (2010), the Eleventh Circuit explained, although the Supreme Court has not specifically addressed the applicability of the cumulative error doctrine when addressing an ineffective assistance of trial counsel claim, it has held there is no basis for finding a constitutional violation unless the petitioner can point to specific errors of counsel which undermined the reliability of the finding of guilt. Thus, a cumulative errors of counsel claim lacks merit without a showing of specific errors of counsel which undermine the conviction in their cumulative effect, amounting to prejudice.

Petitioner has not demonstrated any of his trial counsel's alleged errors, considered alone, rise to the level of ineffective assistance of counsel; therefore, there are no errors to

accumulate, and Petitioner is not entitled to habeas relief. As the threshold standard of <u>Strickland</u> has not been met, Petitioner has failed to demonstrate that his trial was fundamentally unfair and his counsel ineffective. Moreover, the Court finds Petitioner has not shown specific errors which undermine the conviction in their cumulative effect; therefore, he has failed to demonstrate prejudice.

Not only is Petitioner not entitled to relief on his Sixth Amendment claim, he is also not entitled to habeas relief on his Fourteenth Amendment claim that he was deprived of the right to a fair trial. Through his Petition, Petitioner has not shown he was deprived of a fair trial:

> [he] has not demonstrated error by trial counsel; thus, by definition, [Petitioner] has not demonstrated that cumulative error of counsel deprived him of a fair trial. <u>See</u> <u>Yohey v. Collins</u>, 985 F.2d 222, 229 (5th Cir. 1993) (explaining that because certain errors were not of constitutional dimension and others were meritless, petitioner "has presented nothing to cumulate").

<u>Miller v. Johnson</u>, 200 F.3d 274, 286 n.6 (5th Cir.), <u>cert</u>. <u>denied</u>, 531 U.S. 849 (2000).

Based on all of the above, the Court denies federal habeas relief. Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Second Amended Petition (Doc. 13) is **DENIED**.

2.  This action is **DISMISSED WITH PREJUDICE.**

3.  The **Clerk** shall enter judgment accordingly and close this case.

4.  If Petitioner appeals the denial of his Second Amended Petition, **the Court denies a certificate of appealability**.[7] Because this Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 9th day of August, 2019.

_____
BRIAN J. DAVIS
United States District Judge

_____

[7] This Court should issue a certificate of appealability only if a petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)). Upon due consideration, this Court will deny a certificate of appealability.

sa 7/31
c:
Michael L. Flowers
Counsel of Record